CYNTHIA LAWRENCE (SBN 148927)
BRIAN W. PLUMMER (SBN 240210)
SIMS, LAWRENCE & ARRUTI
2261 Lava Ridge Court
Roseville, CA 95661
Telephone:  (916) 797-8881
Facsimile:  (916) 253-1544
E-Mail:  cynthia@sims-law.net
 brian@sims-law.net

Attorneys for Defendant/Cross-Claimant
ALTA CALIFORNIA REGIONAL CENTER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMIKO P., a conserved adult; by and through her conservators MARIKO PESHON MCGARRY, RANDOLF PESHON, AND TERESA PESHON,<br><br>Plaintiffs,<br><br>vs.<br><br>ALTA CALIFORNIA REGIONAL CENTER, ON MY OWN INDEPENDENT LIVING SERVICES, INC., AND PLACER ARC,<br><br>Defendants. | Case No. 2:19-cv-00068-KJM-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ALTA CALIFORNIA REGIONAL CENTER'S MOTION TO DISMISS**<br><br>Date:       October 4, 2019<br>Time:       10:00 a.m.<br>Courtroom:  3, 15th Floor |
| AND ALL RELATED CROSS CLAIMS. | |

**I.     INTRODUCTION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant ALTA CALIFORNIA REGIONAL CENTER ("ACRC") submits the following Motion to Dismiss to dismiss the Plaintiff's Second Amended Complaint in its entirety or, in the alternative, to dismiss the following portions of Plaintiff's Second Amended Complaint: (1) First Cause of Action charging violation of § 504 of the Rehabilitation Act of 1973; (2) Second Cause of Action charging retaliation under § 504 of the Rehabilitation Act of 1973; and, (3) Fifth Cause of Action charging violation of the Unruh Civil Rights Act.

Plaintiff's Second Amended Complaint should be dismissed in its entirety under FRCP Rule 12(b)(1) as the court lacks subject matter jurisdiction of these claims pursuant to the doctrine of failure to exhaust administrative remedies. In the alternative, Plaintiff's First, Second and Fifth Causes of Action should be dismissed under Rule 12(b)(6) as Defendant ACRC is not subject to claims under the Rehabilitation Act or Unruh Civil Rights Act as currently pled by Plaintiff.

## II.   PROCEDURAL BACKGROUND

On January 9, 2019, Plaintiff filed her original Complaint for Relief against Defendants ACRC, ON MY OWN INDEPENDENT LIVING SERVICES, INC., and PLACER ARC (collectively "Defendants"). Plaintiff alleges that she has been sexually exploited as a result of Defendants' failure to ensure the provision of appropriate supports and services under the Lanterman Developmental Disabilities Services Act. (See, generally, Docket No. 1, Plaintiff's Complaint at ¶¶ 10-44.)

On April 18, 2019, Plaintiff filed her First Amended Complaint against Defendants. Plaintiff added and dropped certain causes of action, but the primary contentions of liability remained the same; namely, the lack of supervision permitting Plaintiff to become sexually exploited. (See Docket No. 18, Plaintiff's FAC.)

On July 23, 2019, Plaintiff filed her Second Amended Complaint against Defendants. (See Docket No. 36, Plaintiff's SAC.) Plaintiff's allegations in her Second Amended Complaint are still premised on the same theory of liability: "failure to ensure the provision of appropriate supports and services." (Plaintiff's SAC at ¶ 16.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." See FRCP 12(b)(1). A Rule 12(b)(1) motion can challenge the sufficiency of the pleadings to establish jurisdiction (facial attack), or a lack of any factual support for subject matter jurisdiction despite the pleading's sufficiency (factual attack). See *Grondal v. United States*, 2012 U.S. Dist. LEXIS 19398, at *11-13 (E.D. Wash. Feb. 16, 2012). For a facial attack, all allegations are accepted as true. Id. For a factual attack, evidence outside the pleadings needed to resolve factual

///

///

disputes as to jurisdiction may be considered. See *Assoc. of Am. Med. Coll. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). Plaintiffs have the burden of establishing jurisdiction. See *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Rule 12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." See FED. R. CIV. P. 12(b)(6). For a 12(b)(6) motion, "all well-pleaded allegations of material fact [are accepted as true] and construe[d] in the light most favorable to the non-moving party." *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012). "[C]onclusory allegations of law and unwarranted inferences" are insufficient. *Associated Gen'l Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). A complaint must state "evidentiary facts which, if true, will prove [the claim]," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008), otherwise it will be dismissed. See *Watson v. Weeks*, 436 F.3d 1152, 1157 (9th Cir. 2006).

Plaintiff is unable to establish this Court's jurisdiction over this case and has failed to advance a claim upon which relief can be granted. Therefore, Defendant's Motion to Dismiss should be granted and Plaintiff's claims dismissed.

### IV. EXHAUSATION OF THE ADMINISTRATIVE REMEDY IS A JURISDICTIONAL PREREQUISITE TO RESORTING TO THE COURTS

#### A. The Lanterman Act's Fair Hearing Process

The Lanterman Developmental Disabilities Services Act, Cal. Welf. & Inst. Code §§ 4500 et seq. ("Lanterman Act")[1] establishes a comprehensive scheme for providing services to people with developmental disabilities. *Capitol People First v. State Dept. of Developmental Services*, 155 Cal.App.4th 676, 682 (2007). The Lanterman Act's stated purpose is to establish "[a]n array of services and supports ... which is sufficiently complete to meet the needs and choices of each person with developmental disabilities, regardless of age or degree of disability, and at each stage of life and to support their integration into the mainstream life of the community." (Cal. Welf. & Inst. Code § 4501.)[2]

The court in *Michelle K. v. Superior Court*, 221 Cal.App.4th 409 (2013) provided the following overview of the structure and process followed by the Lanterman Act to effectuate its policy goals:

---

[1] All references hereinafter are to Cal. Welf. & Inst. Code unless otherwise noted.
[2] A "'[d]evelopmental disability'" is "a disability that originates before an individual attains age 18 years, continues, or can be expected to continue, indefinitely, and constitutes a substantial disability for that individual." (§ 4512, subd. (a).)

The state contracts with private nonprofit corporations to establish and operate a network of 21 regional centers that are responsible for determining eligibility, assessing needs, and coordinating and delivering direct services to developmentally disabled persons and their families. (*Capitol People*, *supra*, 155 Cal.App.4th at pp. 682–683, 66 Cal.Rptr.3d 300.) The regional centers' purpose is to "assist persons with developmental disabilities and their families in securing those services and supports which maximize opportunities and choices for living, working, learning, and recreating in the community." (§ 4640.7, subd. (a).) The state "allocates funds to the centers for operations and the purchasing of services, including funding to purchase community-based services and supports. [Citations.]" (*Capitol People*, at p. 683, 66 Cal.Rptr.3d 300.)

"The specific rights of persons with developmental disabilities and the corresponding obligations of the state are determined through an individual program plan (IPP) procedure that meets common statutory requirements. (§§ 4646–4648.) The IPP is developed by a planning team that includes the [developmentally disabled person], his or her legally authorized representative, and one or more regional center representatives. (§ 4512, subd. (j).) The goals and objectives developed through the IPP process should maximize opportunities for the individual to be part of community life; enjoy increased control over his or her life; acquire positive roles in community life; and develop the skills to accomplish the same. (§ 4646.5, subd. (a)(2).)" (*Capitol People*, *supra*, 155 Cal.App.4th at p. 683, 66 Cal.Rptr.3d 300.)

The Lanterman Act guarantees an applicant for, or recipient of (like Plaintiff), "who is dissatisfied with any decision or action of the service agency" the right to an administrative fair hearing. (§ 4710.5, subd. (a).) The statute provides detailed instructions and procedures for the fair hearing process; the procedures are designed to dispose of **all** issues raised by the recipient of services. As explained in *Michelle K.*, "[t]he fair hearing procedures are designed to decide "**all issues** concerning the rights of persons with developmental disabilities to receive services under [the Lanterman Act]." *Michelle K., supra*, 221 Cal.App.4th at 423 (emphasis added). The fair hearing procedure includes the ability to resolve the issues through voluntary informal meetings or voluntary mediation. (§ § 4710.5, subd. (a); 4710.6, subds. (a), (b); 4710.7, 4710.8; 4710.9; 4711.5). If the recipient of services chooses to proceed to an administrative fair hearing, the Lanterman Act provides substantial procedural rights, including a prehearing exchange of potential witnesses and documentary evidence, the right to an interpreter, the right to access to records, the opportunity to present witnesses and evidence, the opportunity to cross-examine all opposing witnesses, the right to appear through counsel, the right to a recording of the hearing at the public's expense, and a written decision by the hearing officer. *Conservatorship of Whitley*, 155 Cal.App.4th 1447, 1460-1461 (2007).

///

///

-4-

MEMORANDUM OF POINTS AND AUTHOROTIES IN SUPPORT OF MOTION TO DISMISS

Following the administrative hearing, within 10 working days "the hearing officer must 'render a written decision' containing 'a summary of the facts, a statement of the evidence from the proceedings that was relied upon, a decision on each of the issues presented, and an identification of the statutes, regulations, and policies supporting the decision.' (citations)" *Whitley, supra,* 155 Cal.App.4th at 1461. The hearing officer must then "transmit the decision to each party and to the director of the responsible state agency" and notify them "this is the final administrative decision, that each party shall be bound thereby, and that either party may appeal the decision to a court of competent jurisdiction within 90 days of the receiving notice of the final decision." (§ 4712.5, subd. (a).) An appeal "shall not operate as a stay of enforcement of the final administrative decision, provided that either party may seek a stay of enforcement from any court of competent jurisdiction." (§ 4715, subd. (c).) Consequently, the courts only "review" the tribunal's final determination in this appeal process.

### B. The Exhaustion of Administrative Remedies Doctrine Divests This Court of Subject Matter Jurisdiction

A party is generally required to exhaust all available administrative remedies and obtain a final decision on the merits as a condition precedent for judicial review. This requirement is known as the doctrine of exhaustion of administrative remedies. Whether a party has exhausted its administrative remedies in a given situation will depend on the procedure set forth by the public agency in question. *Azusa Land Reclamation Co. v Main San Gabriel Basin Watermaster*, 52 Cal.App.4th 1165, 1211 (1997).

Generally, unless all available administrative remedies are exhausted and a final decision is rendered, a court will not act. *Campbell v Regents of Univ. of Cal.*, 35 Cal.4th 311, 321 (2005) (exhaustion of administrative remedies is "jurisdictional prerequisite to resort to the courts"); *Westlake Community Hosp. v Superior Court*, 17 Cal.3d 465, 469 (1976); *Palmer v Regents of Univ. of Cal.,* 107 Cal.App.4th 899, 903 (2003); *Unnamed Physician v Board of Trustees,* 93 Cal.App.4th 607, 619 (2001). Because the exhaustion requirement is often treated as jurisdictional, the parties may not (by stipulation or otherwise) waive it and confer jurisdiction on the court by consent. *Noonan v Green,* 276 Cal.App.2d 25, 31 (1969); *People v Coit Ranch, Inc.,* 204 Cal.App.2d 52, 57 (1962).

///

MEMORANDUM OF POINTS AND AUTHOROTIES IN SUPPORT OF MOTION TO DIMISS

There are two cases directly on point concerning the applicability of the exhaustion of administrative remedies in the context of the Lanterman Act.

In *Michelle K. v. Superior Court*, 221 Cal.App.4th 409 (2013), the court held that the Lanterman Act's administrative fair hearing procedures provide the **exclusive** means for challenging a specific decision to change a committee's placement or the other services she receives.

In the case of *In re Conservatorship of Whitley,* 155 Cal.App.4th 1447 (2007), the court examined the doctrine of exhaustion of administrative remedies and remedies made available to an aggrieved consumer of Lanterman Act services. The court found that a conservator objecting to the services provided by a regional center was required to invoke the administrative fair hearing process authorized by Lanterman before seeking court intervention. (Id. at 1453.) The court ruled that the failure to exhaust administrative remedies is a matter of jurisdiction, which could not be waived by stipulation or inaction. (Id. at 1465.)

As such, the court lacks subject matter jurisdiction over the claims made by Plaintiff in her Second Amended Complaint and the case should be dismissed pursuant to FRCP, rule 12(b)(1).

### V. PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION UNDER SECTION 504 OF THE REHABILITATION ACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A. Plaintiff's Allegations of Federal Funding to ACRC are Insufficient to State a Claim under Section 504

Plaintiff's Second Amended Complaint asserts two causes of action against ACRC based on Section 504 of the Rehabilitation Act. Plaintiff is required to plead and prove, *inter alia*, that ACRC receives federal financial assistance as an element of her Section 504 claim. For the purposes of a claim brought under Section 504, federal financial assistance may be direct or indirect. See *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1211 (9th Cir.1984) (citing *Grove City College v. Bell*, 465 U.S. 555 (1984)).

The Ninth Circuit Court of Appeals considered the question of indirect federal financial assistance under Section 504 in *Herman v. United Bhd. of Carpenters*, 60 F.3d 1375, 1382 (9th Cir. 1995). The plaintiff claimed, *inter alia*, that the union defendant's participation in a training program that was "regulated" by the federal government constituted indirect federal financial assistance. Id. The

court held that "[f]ederal regulation standing alone is not equivalent to federal financial assistance." Id. The court also opined that "[a]lthough Herman would possibly be on firmer ground if the apprenticeship program received some form of financial assistance from the government, even then it would be unlikely that the Rehabilitation Act would apply beyond the program actually receiving the federal assistance." Id. at 1382 n. 3. (citing 29 C.F.R. § 32.2(a) (1993) ("This part applies to each recipient of Federal financial assistance ... but is limited to the particular program for which Federal financial assistance is provided.")).

Here, Plaintiff alleges in a conclusory fashion that ACRC "is a state and federal funded non-profit entity charged with the responsibility of coordinating and developing the supports and services guaranteed by the Lanterman Act. Approximately half of California Alta Regional Center's funding in through federal dollars pursuant to the HCBS." (Plaintiff's SAC at ¶ 10.) The statutory definition of the term "service agency" belies the lack of merit in this allegation.

Plaintiff alleges that ACRC is a direct recipient of federal assistance, but the Lanterman Act defines a "service agency" as "any developmental center or regional center that receives **state funds** to provide services to persons with developmental disabilities." § 4704. (emphasis added). When deciding a motion to dismiss, the court will accept all well-pled allegations as true and construe the complaint in plaintiff's favor, but, as *Iqbal* emphasized, courts should not accept the truth of factual allegations that are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ACRC, as a service agency under the Lanterman Act, receives state funds as a matter of law. The court should ignore the conclusory allegations of Plaintiff's Second Amended Complaint that contradicts the statutory definition of "service agency" and dismiss the First and Second Causes of Action.

### B. Plaintiff Fails to Allege That She Was Discriminated Against Because of Her Disability

Section 504 of the Rehabilitation Act of 1973 prohibits discrimination based on disability in any program or activity operated by recipients of federal funds. It states: "No otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance...." Under the Rehabilitation Act of 1973, the plaintiff must show that she: (1) is a handicapped person under the Act; (2) is otherwise qualified; (3) the relevant program receives federal financial assistance; and (4) the defendants impermissibly discriminated against him or her on the basis of the handicap. *Drawsand v. F.F. Propos, L.L.P.,* 866 F.Supp.2d 1110, 1121 (N.D. Cal. 2011).

Plaintiff's Second Amended Complaint fails to include allegations that she was discriminated against "solely by reason of her disability." Plaintiff does not allege that she was discriminated against because of her disability. In fact, the converse is true. In her First Cause of Action, Plaintiff alleges that ACRC discriminated against her "by failing to provide appropriate supports and services" (SAC at ¶ 69), by "failing to afford Kimi an equal opportunity to participate in or benefit from the aid, benefit, and services provided by" ACRC (SAC at ¶ 70), and by "failing to provide appropriate supports and services based on Kimi's unique needs" (SAC at ¶ 71). Plaintiff's SAC completely lacks any allegation that the discrimination was done "solely by reason of her disability." As such, the allegations of violations of Section 504 in her First Cause of Action are insufficient to state a claim under the statute.

### C. Plaintiff Fails to Allege Facts to State a Cause of Action for Retaliation under Section 504

The necessary elements of a retaliation claim under section 504 are derived by Title VI. The Section 504 regulations incorporate by reference the procedural provisions contained in 34 C.F.R. § 100.7(e) of the federal regulations implementing Title VI of the Civil Rights Act of 1964. See 34 C.F.R. § 104.61. These provisions prohibit recipients or other persons (including districts) from intimidating, threatening, coercing or discriminating against any individual for the purpose of interfering with any right or privilege secured by Section 504, or because the individual has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Section 504. 34 C.F.R. § 100.7(e).[3]

---

[3] The regulation provides: "Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder." (34 C.F.R. § 100.7(e).)

Title VI does not include an express provision prohibiting retaliation. Nonetheless, courts, including the Supreme Court, have held that various anti-discrimination statutes contain an implied cause of action for retaliation based on the general prohibition against intentional discrimination. See, e.g., *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 173 (2005) ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action"). A statute that prohibits intentional discrimination implicitly prohibits acts of retaliation for complaints about or opposition to discrimination. See *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (a prohibition on racial discrimination includes an implicit prohibition on retaliation against those who oppose the discrimination); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008) (a race discrimination statute encompasses retaliation actions as Congress and long line of precedent intended); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (ADEA federal-sector provision that prohibits age discrimination implicitly covers claims of retaliation for filing an age discrimination complaint).

The Supreme Court has defined retaliation as an intentional act in response to a protected action. *Jackson*, *supra*, 544 U.S. at 173-74. Citing *Jackson*, the court in *Gutierrez* underscored the intentional nature of a retaliation complaint: "Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." *Gutierrez v. State of Wash., Dept. of Social and Health Services*, 2005 WL 2346956, at *5 (E.D. Wash. 2005). The complained of matter need not be a complaint; it can be any lawful conduct that an individual engages in connected with a protected right. "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter." *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 514 (1958). It carries with it the notion of "getting even." See Id.

Under Title VI, Plaintiff must plead and prove that (1) she engaged in protected activity of which the recipient was aware; (2) the recipient took a significantly adverse action against the individual; and (3) a causal connection exists between the individual's protected activity and the recipient's adverse action. *Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003).

///

///

In her Second Cause of Action, Plaintiff alleges that ACRC committed "retaliatory conduct" in violation of the Section 504. (SAC at ¶ 79.) Plaintiff fails to allege any of the material facts of this so-called retaliation claim; namely, the nature of the complaint, content of the complaint, the timing of the complaint that may reveal statute of limitation defenses that Plaintiff alleges is the basis for the retaliation. Moreover, Plaintiff fails to allege that any of the decisions made by ACRC were made "because the individual has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Section 504."

As such, the allegations of retaliation in violation of Section 504 in her Second Cause of Action are insufficient to state a claim under the statute.

## VI. PLAINTIFF'S FIFTH CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiff's Second Amended Complaint asserts her Fifth Cause of Action against ACRC based on the Unruh Act. Cal. Civ. Code § 51(b). The Unruh Act prohibits discrimination on the basis of a long list of protected characteristics, including sex and disability, requiring all "business establishments of every kind whatsoever" to provide all persons with "full and equal accommodations, advantages, facilities, privileges, or services." Cal. Civ. Code § 51(b).

California courts have found that "the term 'business establishments' was used in the broadest sense reasonably possible." *O'Connor v. Vill. Green Owners Ass'n.*, 662 P.2d 427 (Cal. 1983). The *O'Connor* court explained that there is "no reason to insist that profit-seeking be a *sine qua non* for coverage under the act. Nothing in the language or history of its enactment calls for excluding an organization from its scope simply because it is nonprofit." Id. at 430-431; see also *Doe v. California Lutheran High Sch. Ass'n*, 170 Cal. App. 4th 828, 836 (2009) ("An organization is not excluded from the scope [of the act] simply because it is a nonprofit."). Accordingly, any analysis must look beyond whether the corporation in question is for-profit or non-profit to whether the organization has a "businesslike purpose." *O'Connor*, 662 P.2d at 431.

Under the allegations of the SAC, it is impossible to tell whether ACRC has any of the typical features of a "business establishment"—whether, for example, it has a board of directors, whether it has a large number of employees, whether and whom it charges fees in exchange for services, and other

crucial facts are all omitted. See *O'Connor*, 662 P.2d at 431 (finding a nonprofit owners association to be a "business establishment" because it "performs all the customary business functions which in the traditional landlord-tenant relationship rest on the landlord's shoulders").

Here, Plaintiff does not plead sufficient facts to establish that ACRC is a "business establishment." She merely recites the elements of a claim under the Unruh Act in her SAC. "[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

As such, the allegations of violation of the Unruh Civil Rights Act in her Fifth Cause of Action are insufficient to state a claim under the statute.

## VII. CONCLUSION

Based upon the foregoing points and authorities, ACRC respectfully requests that the court dismiss Plaintiff's Second Amended Complaint.

Dated: August 27, 2019           SIMS, LAWRENCE & ARRUTI


By: /s/ *Brian W. Plummer*
    CYNTHIA LAWRENCE
    BRIAN W. PLUMMER
    Attorneys for Defendant/Cross-Claimant
    ALTA CALIFORNIA REGIONAL CENTER